STATE, STRETCH ET AL., PROSECUTORS, v. MAYOR AND COMMON COUNCIL OF THE CITY OF HOBOKEN.

1. Under the Road act (*Rev.*, p. 1009, § 70,) limitations have been imposed upon the powers of municipal authorities over streets which have been built on, in the matter of altering the grades. It can be done only by the consent of a majority of the owners in interest upon the part proposed to be regraded. Such consent need not be in writing, but may be evidenced by parol.

2. An ordinance providing that a street should be filled up to the "highest grade," does not indicate a grade with sufficient certainty.

3. The changing of the grade of a street, where the burthen is to be borne by special assessment, is in its nature a judicial act, and the parties affected by it are entitled to a notice that they may have an opportunity to be heard.

On *certiorari* to remove an ordinance of the common council of the city of Hoboken.

Argued at February Term, 1885, before Justices KNAPP and PARKER.

For the prosecutors, *J. C. Besson.*

For the respondents, *W. S. Stuhr.*

The opinion of the court was delivered by

KNAPP, J.   The common council of the city of Hoboken, on August 12th, 1884, passed an ordinance for the construction of a brick sewer in Grand street, between the centre of First street and the southerly line of Second street, and for the regulating and repaving and improving the said street between the said points.   The first section provided for the sewer, man-holes and other adjuncts; the second section ordained that after the construction of the sewer, that part of Grand street in which the sewer was to be built should be filled to the "highest grade," repaved, reflagged, curbs reset, new curbs and flags set in place of broken ones.   The third section provided for assessing the cost and expenses "of the said improvement" upon the real estate benefited.

The proposed sewer was in length about four hundred and fifty feet, running along the block four hundred and twenty-five feet in length, and extending twenty-five feet to the centre of Second street.   Before the passage of the ordinance a petition was presented to the common council bearing the names of land-owners along the line of the proposed sewer, representing more than one-half of the abutting property.   The petition prayed for the construction of the sewer, as well as the filling, repaving and recurbing that part of Grand street.   The council, upon receipt of the petition, directed their clerk to advertise the application; appointed a time to hear objections; a notice was duly published reciting the fact of the application by a majority of the property-own-

ers for the construction of a sewer, but in it was not embraced any notice of the application for raising and repaving the street. At the meeting of the council to hear objections certain petitioners, representing two hundred and twenty-five feet in length of the property, appeared and asked to have their names withdrawn from the petition, the reason given being that they did not understand their petition to embrace any other improvement than the construction of the sewer.

One of the grounds for setting aside this ordinance is, that the petition is not signed by the requisite number of property-owners.

The sixth subdivision of the fortieth section of the charter of Hoboken requires as prerequisite to the construction of a sewer the filing of a petition, in writing, with the council, signed by two-thirds of the owners of property upon the street asking for its construction.

By an act passed April 30th, 1884, it is provided that where in any city petitions for the construction of sewers are required to be signed by persons owning more than one-half the lineal frontage of lands along the streets through which it is proposed to construct a sewer, it shall hereafter only be necessary that such petition be signed by the persons owning at least one-half of the lineal frontage along the street through which it is proposed to construct the sewer.

No objection is suggested to this legislation, and it is conceded that it reduces the requisite number of petitioners to owners of not less than one-half. But it is insisted that persons signing the petition had a right to withdraw, and that their withdrawal reduced the number below the requisite one-half. I think it unnecessary to decide the question of the right of the petitioners to withdraw their names from a petition when once filed, because it is admitted that the signers, sufficient in number, designed to petition for a sewer, and as to that did not seek to revoke their petition. What they sought to withdraw their names from, was that part of the petition in respect to the other improvement of the street; for this the charter required no petition, and if they all had with-

drawn, or if they had failed to embrace it in the petition, the council were still at liberty to make this improvement, unless restrained by the seventy-third section of the act concerning roads. *Rev., p.* 1009, § 73. This act prescribes that the grade of no street in any city or town which has been built on shall be altered, unless by the consent of the majority of the owners in interest of the lands fronting on the part proposed to be altered; nor without paying to the owners of such building the damages sustained by the alteration of such grade.

Another reason assigned for annulling the ordinance is, for uncertainty in its provisions respecting the grade of the street to be improved. It provides for "the highest grade." The adoption of a grade for a street in municipal legislation is important, as affecting the interests of adjoining owners of property. The Road act above referred to has imposed limitations on the powers of municipal authorities over streets which like this have been built upon, in the matter of altering their grades. It can be done only by the consent of a majority of the owners in interest of the lots fronting upon the part proposed to be regraded. This consent need not be in writing, but may be evidenced by parol. *State* v. *Morristown,* 5 *Vroom* 447, 448.

A change of grade is an act judicial in character, and should be reasonably certain. *Kearney* v. *Andrews,* 2 *Stock.* 70. A reference to maps on file has been held to indicate a grade with sufficient certainty, but what are we to understand to be the meaning of the term "highest grade" in this ordinance? It refers to no map; it is not the highest grade in the city, nor the highest grade of the street; it is a term unknown in the law and seems to have no settled local meaning. (If it were upon the present grade, we would expect to have it so expressed in the ordinance.) If the design be to raise the grade, which appears to be the case by the return to the writ and the testimony, and, I think, as well by the ordinance, how much is it to be raised? All these questions the landowner is interested in asking, and it is certain the terms of the ordinance give him no answer. If the design be to change

the grade, another objection to this ordinance presents itself in the want of the requisite consent of the land-owner. The petition presented for this improvement, which treats it as an entirety, bore the names of more than one-half of the adjoining land-owners. This would be a sufficient consent to remove the disability imposed by the section of the Road act referred to. But one of the names on that petition was not subscribed by the person purporting to have signed, and the authority is denied, and is not asserted, to subscribe that name as a consent to an alteration of the grade. If the property which that owner represents be withdrawn, then that remaining fails to represent one-half, and no other evidence of consent to a change of grade, save that afforded by the petition, is found. The insuperable objection of a want of power in the council to pass the ordinance would thus be presented.

Another reason assigned for invalidating this ordinance is, that no notice was given of its intended passage. In the regulation of streets, under the city charter, no notice is required, in express terms, so far as our attention has been called to the charter, and without such requirement it would be competent under the powers conferred upon the council to repave streets and renew losses incident to waste and wear, because these are the exercise of a continued ministerial power. But to change the grade of the street, to lay out a new street, where the burthen is to be borne by special assessment, is judicial, and the parties to be affected by municipal action are entitled to have notice, that they may be heard in opposition to any determination upon their rights. *State* v. *Jersey City*, 4 *Zab.* 662 ; *State* v. *Freeholders of Hudson*, 4 *Zab.* 718 ; *State* v. *Newark*, 1 *Dutcher* 399 ; *State* v. *Morristown, supra ; City of Camden* v. *Mulford*, 2 *Dutcher* 49, 57.

The case of State *v.* Morristown is one directly in point, and holds that an ordinance to change the grade of a street is, in its nature, judicial, and that notice must be given to those who may be affected by it. The fact of consent by the requisite number of land-owners does not dispense with such notice. *Township of Morris* v. *Carey*, 3 *Dutcher* 377.

Other reasons are presented, which we deem it needless to consider. The propriety of uniting in one ordinance the construction of a sewer and the paving of a street, providing for one assessment for the whole, the proceedings under the charter being essentially different as to each, we have not considered, because the question is not raised by the reasons. But, on the grounds above given, we think the ordinance is invalid, and as its provisions, in respect to the street, are unseverable from the other, the whole should be set aside.